### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| **CHRISTOPHER M. HARTSFIELD** | Case No.: |
| 5435 Amandas Oak Court | |
| Cincinnati, OH 45248 | |
| | Judge: |
| and | |
| | **COMPLAINT FOR DAMAGES** |
| **HEIDI M. HARTSFIELD** | |
| 5435 Amandas Oak Court | **JURY DEMAND ENDORSED HEREON** |
| Cincinnati, OH 45248 | |
| Plaintiffs, | |
| vs. | |
| **OCWEN LOAN SERVICING LLC** | |
| c/o Corporation Service Company, Registered Agent | |
| 50 W. Broad Street, Suite 330 | |
| Columbus, OH 43215 | |
| Defendant. | |

Plaintiffs Christopher M. Hartsfield and Heidi M. Hartsfield (collectively, "Plaintiffs" or the "Hartsfields" and individually "Mr. Hartsfield" and "Mrs. Hartsfield") and for their Complaint against Defendant Ocwen Loan Servicing, LLC ("Defendant" or "Ocwen") state as follows:

### WHY PLAINTIFFS ARE FILING THIS CASE

1.     Like many individuals over the past decade, the Hartsfields encountered economic hardships and had some struggles to pay their mortgage loan. Mr. Hartsfield filed a Chapter 13 Bankruptcy to reorganize his debts, including a mortgage delinquency. During the Chapter 13 the Plaintiffs reached out to their loan servicer, Ocwen, for assistance with a loan

modification. The Plaintiffs and Ocwen reached a loan modification and Mr. Hartsfield completed his Chapter 13 Plan. Pursuant to Fed. Bankr. R. 3002.1, the Chapter 13 Trustee filed her Notice of Final Cure and Ocwen agreed, in a court filing, that the loan was current. In a story that has become more and more common the Hartsfields resumed their obligations post-discharge only to have their loan servicer improperly misapply funds tendered after the discharge but do so, partially, in an attempt to collect fees paid back in the Chapter 13. This now nine month ordeal has led to the account falling delinquent, a foreclosure filing, and now the filing of this Complaint as Ocwen has simply failed to properly service the Plaintiffs' mortgage loan.

## PARTIES, JURISDICTION, AND VENUE

2.     The Hartsfields are the owners of the real property and improvements located at and commonly known as 5435 Amandas Oak Drive, Cincinnati, Ohio 45246 (the "Home").

3.     The Hartsfields have at all times relevant to the Complaint maintained the Home as their primary, principal residence and continue to maintain the Home as such.

4.     Defendant Ocwen is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409.

5.     Ocwen does business in the State of Ohio and is licensed to do business in the State of Ohio as a foreign Corporation.

6.     For all times relevant herein Ocwen wasthe servicer of a Note and Mortgage on the Home (collectively "the Loan") and will remain so until April 30, 2019.[1]

7.     Jurisdiction over the claims against Ocwen is conferred by 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(k), and 11 U.S.C. § 105.

8.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as the Hartsfields purchased the Home for their primary residence within the District, Ocwen does business in this District, and the conduct complained of took place primarily in this District.

## INTRODUCTION AND SUMMARY OF CLAIMS

### REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)

9.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

10.     This action is brought in part to enforce regulations promulgated by the Consumer Financial Protection Bureau ("CFPB") that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.35 of Regulation X.

11.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

---

[1] On April 17, 2019 the Hartsfields, through Counsel, received correspondence dated April 11, 2019 from Ocwen notifying the Hartsfields that as of May 1, 2019 the Loan will be serviced by PHH Mortgage Services.

12. Ocwen is subject to the aforesaid regulations and each does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.700.

13. The Hartsfields assert claims for relief against Ocwen for breaches of the specific rules under Regulation X as set forth, *infra*.

14. The Hartsfield assert private rights of action under RESPA pursuant to 12 U.S.C. § 2605(f), and any such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

**OTHER CLAIMS**

15. The Hartsfields also assert claims against Ocwen for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. (the "FDCPA")

16. Mr. Hartsfield and Mrs. Hartsfield are each a "consumer" as that term is defined by 15 U.S.C. §1692(a)(3); and a person affected by a violation of the FDCPA, and other violations, with standing to bring this claim primarily under 15 U.S.C. §1692.

17. Ocwen is a "debt collector" as defined by the FDCPA at 15 U.S.C. §1692(a)(6) because, as described later herein and based on Exhibit A to this Complaint, Ocwen began servicing the loan on September 14, 2011 at a time when the loan was delinquent. *See Exhibit A* at p. 2

18. For all times since and as admitted in Exhibit A, Ocwen has acted as a debt collector.

19. The Loan is a "consumer transaction" and "debt" as those terms are defined by the FDCPA.

4

20.     Mr. Hartsfield also brings this claim pursuant to 11 U.S.C. § 105 for Ocwen's willful violations of Fed. Bank. R. 3002.1 described herein.

21.     The Hartsfield also assert statutory claims against Ocwen individually for violations of the Ohio Residential Mortgage Loan Act, ORC 1322.01, *et seq*.

## STATEMENT OF FACTS

### The Chapter 13 Bankruptcy - 2013 through June 2018

22.     The Hartsfields incorporate all of the allegations contained in Paragraphs 1 through 21 as is fully restated herein.

23.     On June 19, 2013 Mr. Hartsfield filed his petition for relief under Chapter 13 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Ohio, Western Division at Cincinnati Case No. 13-12919 (the "Chapter 13"). *See Exhibit B* - Docket Sheet.

24.     At the time Mr. Hartsfield filed his Chapter 13 he was delinquent on the Loan and indicated his intention to cure all pre-petition arrearage claims on the Loan through his Chapter 13 Plan.

25.     On October 28, 2013 Ocwen, on behalf of the Loan's owner U.S. Bank National Association, as Trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-4 (the "Owner of the Loan"), filed Proof of Claim No. 5-1 in the Chapter 13, a copy of which is attached as Exhibit C to this Complaint.

26.     In the Chapter 13, Ocwen asserted that as of June 19, 2013 the Loan was delinquent in the amount of $41,926.43. *See Exhibit C* at p. 1.

27.     Mr. Hartsfield's Chapter 13 Plan was confirmed on October 31, 2013. *See Exhibit B* at p. 5.

28.     Following confirmation of Mr. Hartsfield's Plan, the Hartsfields contacted Ocwen for the purposes of entering into a loan modification. The application(s) for loss mitigation culminated with the Hartsfields entered into a loan modification with Ocwen, a copy of which is attached as Exhibit D (the "Modification").

29.     Pursuant to the Modification the Hartsfields' loan was modified to the following terms:

  a.   Interest Bearing Principal Balance of $230,932.12;
  b.   Modified Interest Rate of 3.0% effective with the December 1, 2016 Mortgage Payment;
  c.   Principal and Interest payments of $1,313.02;
  d.   Escrow Payments of $528.97; and,
  e.   Maturity Date of Loan of March 1, 2036

*See Exhibit D* at p. 3.

30.     The Modification was approved by the Bankruptcy Court on May 10, 2017 following a *Nunc Pro Tunc* Motion to Approve Permanent Loan Modification filed by the Hartsfields, through their Bankruptcy Counsel in the Chapter 13. *See Exhibit B* at p. 9.

31.     Following the approval of the Modification by the Bankruptcy Court, Ocwen, on behalf of the Loan's owner, amended Proof of Claim No. 5-1 on October 16, 2017 which is attached as Exhibit E to this Complaint (the "Amended Claim").

32.     In the Amended Claim, Ocwen modified the pre-petition arrearage claim to $15,939.73 to reflect all disbursements made by the Chapter 13 Trustee prior to the effective date of the modification. *See Exhibit E* at p. 2.  The remaining arrearage amount of $25,986.70 was to have been re-amortized into the Principal Balance of the Modification.

33.     On June 5, 2018 the Chapter 13 Trustee filed her Notice of Final Cure Mortgage Payment pursuant to Fed. Bankr. R. 3002.1. *See Exhibit B* at p. 13.

34.     On June 18, 2018 the Owner of the Loan, based on the servicing records of Ocwen, through Counsel, filed its Response to the Notice of Final Cure which is attached as Exhibit F to this Complaint (the "1st Response").

35.     In the 1st Response, the Owner of the Loan, based on Ocwen's servicing records, agreed that the pre-petition mortgage arrearages had been cured in the Chapter 13 but that the post-petition mortgage payments, which the Trustee had asserted were all paid, were delinquent in the amount of $5,934.70 and the Loan was due for the March 1, 2018 contractual payment as of June 18, 2018,. *See Exhibit F* at pp. 1-4

36.     On June 22, 2018 the Owner of the Loan, based on Ocwen's servicing records, through Counsel filed its Amended Response to the Notice of Final Cure which is attached as Exhibit G to the Complaint (the "2nd Response").

37.     In the 2nd Response the Owner of the Loan, based on Ocwen's servicing records, through Counsel, less than 96 hours after filing the 1st Response indicating the loan was delinquent $5,934.70, indicated the loan was now current through June 1, 2018. *See Exhibit G*; *Compare* Exhibit G with Exhibit F.

38.     Mr. Hartsfield received his Chapter 13 Discharge on July 10, 2018. *See Exhibit B* at p. 1; *see also* Exhibit B at p. 14.

39.     On July 18, 2018 the Chapter 13 Trustee filed her Chapter 13 Trustee's Final Report in the Chapter 13, a copy of which is attached as Exhibit H.  In her final report, the

Trustee indicated that she had disbursed the following amounts to Ocwen between June 19, 2013 and May 7, 2018:

   a.  On-going mortgage payments (post-petition mortgage payments due from July 1, 2013 through May 7, 2018): $103,837.81;
   b.  Mortgage arrearage (pre-petition mortgage payments due prior to June 19, 2013): $15,939.73; and,
   c.  Total payments disbursed to Ocwen: $119,777.54.

*See Exhibit H.*

## Post Discharge to the present

40.     As demonstrated by Exhibits B and G, the Hartsfields were to resume direct mortgage payments to Ocwen effective with the June 1, 2018 contractual payment due on the Loan.

41.     In early June 2018 the Hartsfields attempted to make their payment online but were precluded from doing so.  On or about June 18, 2018 the Hartsfields made the June 1, 2018 contractual payment in the amount of $1,791.53. *See Exhibit A* at p. 33.

42.     The Hartsfields made a 2nd payment on June 18, 2018 of $1,791.53 which was intended to be their July 1, 2018 payment. *Id.*

43.     The Hartsfields made their next payment to Ocwen on August 11, 2018 in the amount of $1,800.00 which was intended to be their August 1, 2018 payment. *Id.*

44.     The Hartsfields made their next payment to Ocwen on September 12, 2018 in the amount of $1,805.57 which was intended to be their September 1, 2018 payment. *Id.*

45.     On or about September 13, 2018 the Hartsfields received a Notice of Default dated September 11, 2018 from Ocwen advising them that the Loan was delinquent in the amount of $7,390.69. *See Exhibit I* at pp. 1-4 (the "1st Notice").

8

46.     The Hartsfields were confused as since June 1, 2018 the Hartsfields had tendered the June 1, 2018, July 1, 2018, August 1, 2018 and September 1, 2018 contractual payments in the amounts of $1,791.53; $1,791.53; $1,800.00 and $1,805.57 respectively. *See Exhibit A* at p. 33.  These payments totaled $7,188.63.

47.     The Hartsfields were also upset and confused as the 1st Notice also added additional fees of $14.50. *Exhibit I* at p. 2.

48.     In reviewing Exhibit I in conjunction with Exhibits D, E, F, G, and H, the Hartsfields were further concerned that the $2,316.31 in late fees noted on Exhibit I were amounts already paid in the Chapter 13. *See Exhibit I* at p. 2.

49.     On or about September 26, 2018 the Hartsfields received a 2nd Notice of Default dated September 25, 2018 from Ocwen (the "2nd Notice"). *Id.* at pp. 5-8. The 2nd Notice indicated the Loan was delinquent in the amount of $5,590.12. *Id.* at p. 6.

50.     The Hartsfields were again upset and confused as to why the 2nd Notice continued to assert the same late charges ($2,316.31) as the 1st Notice. *Compare Exhibit I* at p. 2 with *Exhibit I* at p. 6.

51.     In comparing the 2nd Notice to the 1st Notice, as well as Exhibits D, E, F, G, and H, the Hartsfields continued to be concerned that the $2,316.31 in late fees were amounts already paid in the Chapter 13.  *Id.* at p. 6.

52.     The Hartsfields were upset and confused as the 2nd Notice also added additional fees of $19.50. *Id.*

53.     The Hartsfields sent in a payment to Ocwen on October 10, 2018 in the amount of $1,805.57 which the Hartsfields intended to be their October 1, 2018 payment on the Loan. *Exhibit A* at p. 34.

54.     On or about October 28, 2018 the Hartsfields received a 3rd Notice of Default dated October 26, 2018 from Ocwen (the "3rd Notice"). *Exhibit I* at pp. 9-12. The 3rd Notice indicated the Loan was delinquent in the amount of $5,619.12. *Id.* at p. 10.

55.     The Hartsfields were upset and confused as the 3rd Notice continued to assert the same late charges ($2,316.31) as both the 1st Notice and the 2nd Notice. *Compare Exhibit I* at p. 2 with *Exhibit I* at p. 6 and *Exhibit I* at p. 10.

56.     The Hartsfields were upset and confused as the 3rd Notice also added additional fees of $48.50. *Exhibit I* at p. 10.

57.     Following receipt of the 3rd Notice, the Hartsfields tendered a payment in the amount of $1,805.57 to Ocwen on November 12, 2018 which they intended to be the November 1, 2019 Loan Payment. *Exhibit A* at p. 34

58.     Frustrated with the 1st Notice, 2nd Notice, and 3rd Notice despite Exhibits D, E, F, G and H, the Hartsfields decided to seek legal advice as while the Hartsfields believed they were contractually current while Ocwen, based on Exhibit I, continued to believe the Hartsfields were at least two contractual payments delinquent on the Loan.

59.     On February 1, 2019 the Hartsfields, through Counsel, sent a Request for Information ("RFI #1") to Plaintiffs' servicer, Ocwen, pursuant to 12 C.F.R. § 1024.36 requesting, among other things, a life of loan transaction history from the pendency of the Chapter 13 until the present time.

60. On March 19, 2019 the Hartsfields, through Counsel, received a substantive response to RFI #1 which is the life of loan transaction history attached as Exhibit A to this Complaint. *See generally Exhibit A.*

61. On February 7, 2019 the Hartsfields, through Counsel, sent a Notice of Error pursuant to 12 C.F.R § 1024.35(b)(2) and/or 12 C.F.R. § 1024.35(b)(11) and Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(5) a copy of which is attached as Exhibit J to this Complaint (the "NOE").

62. Exhibit J contained the Plaintiffs' names, address, loan number and was sent to Ocwen's designated address for receipt of Requests for Information and Notices of Error. *Exhibit J* at p. 1.

63. Exhibit J contained specific reference to error(s) that the Plaintiffs requested Ocwen investigate pursuant to 12 C.F.R. § 1024.35(b)(2) and/or 12 C.F.R. § 1024.35(b)(11). *Id.* at p. 2. Specifically the Plaintiffs were requesting that Ocwen re-review the on-going mortgage payment as well as all payments tendered by June 1, 2018 based upon a September 20, 2018 pay history provided by Ocwen to the Plaintiffs. *Id.; See also* Exhibit J at pp. 6-57.

64. Exhibit J also contained specific reference to error(s) that the Plaintiffs requested Ocwen investigate pursuant to 12 C.F.R. § 1024.35(b)(5) related to: (1) The $2,316.51 in late fees noted in the 1st Notice, 2nd Notice and 3rd Notice; and (2) the Property Inspection Fees of at least $48.50 which existed on the 3rd Notice. *See Exhibit J* at pp. 2-3; *see also* Exhibit J at pp. 6-57.

65. Exhibit J was received by Ocwen at its designated address for receipt of Requests for Information and Notices of Error on February 7, 2019. *See Exhibit K* - proof of mailing.

66. To date neither the Plaintiffs nor Plaintiffs' Counsel have received any correspondence acknowledging receipt of Exhibit J.

67. To date neither the Plaintiffs nor Plaintiffs' Counsel have received any correspondence responding to Exhibit J.

68. On February 28, 2019 the Owner of the Loan initiated foreclosure proceedings based on the servicing records of Ocwen in the Hamilton County (OH) Court of Common Pleas Case No. A1901082 captioned *US Bank National Association as successor in interest to Bank of America National Association, as trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-backed Certificates, Series 2006-4 v. Christopher M. Hartsfield, et al*. A copy of the Foreclosure Complaint is attached as Exhibit L.

69. In Exhibit L the Owner of the Loan, based on Ocwen's servicing records, is asserting that the Loan as of February 28, 2019 is unpaid in the amount of $214,314.93 plus interest at the rate of 3% per annum from September 1, 2018. *See Exhibit L* at pp. 3-7.

70. The Hartsfields have retained Counsel to defend the Foreclosure and timely filed their Answer and Counterclaims on April 26, 2019 as the Owner of the Loan is seeking to foreclose improperly based on the allegations contained herein*, supra*, and specifically based on Exhibits A, D, E, G, and H.

## IMPACT OF DAMAGE UPON THE HARTSFIELDS

71. As stated, *supra*, the Hartsfields and Ocwen negotiated at arm's length to entered into a loan modification in 2016 to cure the remaining arrearages on the Loan and the Hartsfields got Bankruptcy Court approval for that modification. *See* Exhibit D; *see also* Exhibit E.

72.     As also stated, *supra*, Mr. Hartsfield completed his Chapter 13 and at the time of receipt of discharge Ocwen based on Exhibit G agreed that the Hartsfields were contractually current through May 31, 2018. *See Exhibit G.*

73.     Based on the allegations described, *supra*, what has followed since June 1, 2018 is a saga of confusion and misapplication of payments by Ocwen which based on Exhibit A began as early as June 12, 2018 and continues to this day which has led to: (1) Improper amounts of delinquencies sought to be collected in the 1st Notice, 2nd Notice, and 3rd Notice; (2) improper late fees of $2,316.31 being assessed by Ocwen which based on Exhibits A and G are amounts that were satisfied in the Chapter 13; (3) improper other fees of at least $48.50 as stated in the 3rd Notice in Exhibit I; and (4) the filing of a foreclosure by the Loan's Owner using Ocwen's servicing records seeking an amount that does not account for at least $5,324.00 in payments tendered by the Plaintiffs to Ocwen since June 1, 2018 to the filing of the Foreclosure Complaint.

74.     The Hartsfields have been consumed by worry and anxiety over the status of the Loan since at least the time of the 1st Notice when neither of them, especially in light of Exhibits A, G, and H, should reasonably expected to endure such worries. Ocwen has failed to account for all tendered payments since June 1, 2018 by the Hartsfields. This failure has led to the issues described in Paragraph 73.

75.     The actions of Ocwen, both as a servicer and debt collector, have caused the Hartsfields to unnecessarily remain in an improper status of default or otherwise in delinquent status on the Loan than had Ocwen acted appropriately and with reasonable diligence in their handling of errors alleged.

76.     Throughout this entire ordeal all the Hartsfields wanted was for Exhibits D, E, and G to be honored. The Hartsfields even exercised their right to make a reasonable request for Ocwen to investigate the perceived errors on the loan which to this date Ocwen has failed to properly acknowledge and respond to.

77.     As a result of the Ocwen's actions as detailed herein the Hartsfields suffered actual economic damages including but not limited to: (1) The misapplication of at least three (3) Loan payments totaling $5,324.00 tendered to Ocwen pursuant to Exhibit A; (2) the incursion of late fees totaling $2,316.21; (3) the incursion of improper other fees in the amount of $48.50; (4) the incursion of legal fees and expenses related to the investigation, drafting, and mailing of NOE #1; and (5) the incursion of legal fees and expenses related to the defense of the Foreclosure Complaint. In addition to the actual economic damages referenced above, the Hartsfieldssuffered actual non-economic damages in a yet to be determined amount related to: (1) The emotional distress from the misapplication of payments which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress; and (2) the continued emotional distress driven by enduring an unnecessary foreclosure.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS AGAINST OCWEN**

78.     Ocwen has engaged in a pattern and practice of mistreating mortgage loan borrowers and violating provisions of RESPA, 12 U.S.C. §§ 2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. part 1024.

79.     At the time of the filing of this Complaint, Ocwen has had at least Eleven Thousand (11,000) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection,

foreclosure" related to mortgage products and at least Two Hundred Forty Two (242) such complaints identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account". Each such complaint is filed and cataloged in the CFPB's publicly accessible online database, which is located at: http://www.consume rfinance.gov/complaintdatabase/.

80.     Plaintiffs have reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by Rushmore against other borrowers. In particular, the Plaintiffs have reviewed the fifteen (15) consumer complaints attached hereto and identified as ***Plaintiffs' Exhibit M***. The date, details, and a narrative disclosed by each consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that Rushmore has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

81.     At all relevant times, Ocwen acted within the scope of its authority as the agent for US Bank National Association as successor in interest to Bank of America National Association, as trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-backed Certificates, Series 2006-4.

### COUNT ONE: VIOLATIONS OF RESPA
**[Multiple violations of 12 C.F.R. §1024.35(e) for failure to reasonably investigate and properly respond to  notices of error in violation of 12 C.F.R. §1024.35]**

82.     The Hartsfields restate and incorporate the statements and allegations contained in paragraphs 1 through 81 in their entirety, as if fully rewritten herein.

83.     12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

84.   Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

85.   12 C.F.R. § 1024.35(d) provides that a servicer must acknowledge in writing receiving a notice of error from a borrower within five (5) days of receipt.

86.   12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or:

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

87.   NOE #1 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See* Exhibit J.

88.   Plaintiffs sent NOE #1 to Ocwen at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Address") and Ocwen received the same at such address. *Id.*

89.   Exhibit J contained specific reference to error(s) that the Plaintiffs requested Ocwen investigate pursuant to 12 C.F.R. 1024.35(b)(2) and/or 12 C.F.R. 1024.35(b)(11). *Id.* at p. 2. Specifically the Plaintiffs were requesting that Ocwen re-review the on-going mortgage

payment but also all payments tendered by June 1, 2018 based upon a September 20, 2018 pay history provided by Ocwen to the Plaintiffs. *Id.; See also* Exhibit J at pp. 6-57.

90. Exhibit J also contained specific reference to error(s) that the Plaintiffs requested Ocwen investigate pursuant to 12 C.F.R. 1024.35(b)(5) related to (1) the $2,316.51 in late fees noted in the 1st Notice, 2nd Notice and 3rd Notice and (2) the Property Inspection Fees of at least $48.50 which existed on the 3rd Notice. *See Exhibit J* at pp. 2-3; *see also* Exhibit J at pp. 6-57

91. Ocwen received NOE #1 at the Designated Address within a week of Plaintiffs mailing such notice. *See* Exhibit K.

92. Pursuant to 12 C.F.R. § 1024.35(d), Ocwen was required to acknowledge receipt of NOE #1 within five (5) business days of its receipt of NOE #1 or February 14, 2019.

93. Based on the allegations contained herein neither the Hartsfields nor Counsel received an acknowledgment to NOE #1 within five business days.

94. Pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(C), Ocwen was required to respond to NOE #1 within thirty (30) business days of their receipt of NOE #1 or March 22, 2019.

95. Based on the allegations contained herein neither the Hartsfields nor Counsel received a response to NOE #1 within the required time frame pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(C).

96. To this date and as demonstrated by Exhibit J, Ocwen has failed to correct the errors asserted through NOE #1.

97. Ocwen's actions are part of a pattern and practice of behavior in violation of the Hartsfields' rights and the rights of other similarly situated borrowers as demonstrated by Exhibit

M and in violation of Ocwen's obligations under Regulation X. Ocwen's pattern and practice as such is evidenced by their failure to acknowledge receipt of NOE #1 and failure to respond at all to the two (2) separate and distinct errors raised in NOE #1 as described herein, *supra*. *See also* Exhibit J.

98.     Plaintiffs have suffered damages as a direct and proximate result of Rushmore's actions including incurring legal fees and expenses in the preparation and mailing of NOE #1, and, ultimately, for the preparation, filing, and prosecution of this case to remedy Ocwen's wrongful conduct.

99.     Additionally, Plaintiffs have suffered, and continue to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress, as further described, *supra*.

100.     As a result of Ocwen's actions, Ocwen is liable to Plaintiffs for actual damages, statutory damages per Plaintiff for each of the three violations described in this Count, costs, and attorneys' fees.

**COUNT TWO: VIOLATIONS OF FDCPA**
**Violation of 15 U.S.C. §1692k**
**[Violation of the Fair Debt Collection Practices Act]**

101.     The Hartsfields restate and incorporate all of their statements and allegations contained in paragraphs 1 through 81 in their entirety, as if fully rewritten herein.

102.     Based on Exhibit A Ocwen has acted at all times in the servicing of the loan as a debt collector as it began servicing this Loan at a time when the Loan was in default.

103.     Mr. and Mrs. Hartsfield are each a "consumer" as that term is defined by the FDCPA.

104.     The Loan is a consumer debt as that term is defined by the FDCPA because the Loan was incurred for household purposes--namely the refinance of an existing mortgage loan that was being used for household purposes.

105.     Each of the statements contained in the 1st Notice, 2nd Notice, and 3rd Notice contains a misrepresentation of the character, amount, and legal status of the loan. Ocwen misrepresented to the Hartsfields in each of these Notices that they owed sums on the loan which were not in fact true. *Compare* Exhibit A at pp. 33-37 with Exhibit I.

106.     Based on Exhibits A, G and H, at the time Ocwen sent each of these statements Ocwen knew or should have known the balances it was seeking to collect were incorrect. Ocwen violated 15 U.S.C. §1692(f) by sending each Notice in Exhibit I because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

107.     15 U.S.C. § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

108.     The Hartsifleds were damaged by the above actions as described *supra*.

109.     Ocwen has violated the FDCPA and is liable to each of the Hartsfields for an award of statutory damages, actual damages, and legal fees pursuant to 15 U.S.C. §1692k(a).

## COUNT THREE: VIOLATIONS OF THE BANKRUPTCY CODE
### (Violation of Court Order pursuant to Fed. Bankr. R. 3002.1)

110.     Plaintiffs restate all allegations contained in Paragraphs 1 through 81 with the same force and effect as though fully set forth herein.

111.    As stated above Ocwen was an active participant in Mr. Hartsfield's Bankruptcy case through actions including the filing of two Proofs of Claim, the receipt of the Notice of Final Cure, and responding to the Notice of Final Cure twice. *See Exhibits C, E, F, and G.*

112.    Despite their knowledge that the loan was current as of May 31, 2018, as Ocwen admitted in Exhibit G, Ocwen sent three (3) separate Notices of Default - Exhibit I - which sought to collect late fees in the amount of $2,316.21 which reflects amounts that Ocwen was either paid in the Chapter 13 or for which Ocwen failed to file Notices of Post-Petition Fees, Charges and Expenses. *See Exhibit G and I.*

113.    Based on Exhibit A, Ocwen applied post-petition payments tendered by the Hartsfields toward payments that Ocwen admitted were current in Exhibit G. Based on a review of Exhibits A, G, and H, the Hartsfields believe this amount is at least $1,791.53.

114.    Ocwen's above-described actions are deliberate and are intentional adverse acts done with respect to the Plaintiffs' Mortgage Loan.

115.    Ocwen's policies and procedures in handling the Fed. Bankr. R. 3002 notice show a complete and reckless disregard toward the Orders of the Bankruptcy Court.

116.    The actions of Ocwen as demonstrated by Exhibits A, G, H, I, and J have caused material injuries to Mr. Hartsfield and have caused Mr. Hartsfield lost time, undue hardship, stress, incursion of legal fees and continued damage to his credit.

117.    The actions of Ocwen as demonstrated by Exhibits A, G, H and I indicate a systemic problem within Ocwen concerning how it processes Orders of the Bankruptcy Court both during the pendency of bankruptcy cases and post-discharge.

118.    As a result of Ocwen's actions, Ocwen is liable to Mr. Hartsfield for actual damages in a total amount to be determined at trial, attorneys' fees and costs, and a finding of punitive damages under 11 U.S.C. 105 in an amount this Court deems just and proper.

### COUNT FOUR: VIOLATIONS OF RMLA
### Violation of O.R.C. 1322.01, *et seq.*
### [Violation of the Ohio Residential Mortgage Lending Act]

119.    The Hartsfields restate and incorporate all of their statements and allegations contained in paragraphs 1 through 81 and the allegations contained in Paragraphs 101 through 108 in their entirety, as if fully rewritten herein.

120.    Ocwen is a mortgage broker and non-bank mortgage lender, registered under the Nationwide Mortgage Licensing system as NMLS ID 1852[2] and in Ohio under the Residential Mortgage Loan Act (RMLA), R.C. 1322.07, as license number GL.501557.000

121.    The RMLA imposes fiduciary duties upon licensees which require them to "[a]ct with reasonable skill, care, and diligence", R.C. 1322.45(A)(3), *renumbered by Ohio House Bill 199 from prior R.C. 1322.081.*

122.    As alleged, *supra*, Ocwen's failure to comply with both Fannie Mae regulations and Orders of the Bankruptcy Court are failures to act with reasonable skill, care, and diligence. Each of these acts described herein are a violation of Ocwen's fiduciary duties outlined in R.C. 1322.45(A)(3).

123.    Ocwen's conduct as alleged in the preceding paragraphs are practice or course of business which is in breach of the covenant of good faith and fair dealing imposed upon Ocwen by R.C. 1349.41(B) and (D).

---

[2] http://www.nmlsconsumeraccess.org/Home.aspx/MainSearch, last visited April 24, 2019

124. Based on Ocwen's actions described herein, the Hartsfields are entitled to an award of actual damages in an amount to be determined at trial, punitive damages, and reasonable attorneys fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs Christopher M. Hartsfield and Heidi M. Hartsfield respectfully request that this Court enter an Order granting Judgment against Defendant Ocwen Loan Servicing as follows:

A. For an award of actual damages against Ocwen in the amount of at least $5,324.00 as applicable, as to all of the allegations contained in Counts One through Four;

B. For an award of statutory damages against Ocwen per Plaintiff of Two Thousand Dollars ($2,000.00) for each of the three (3) separate and distinct violations alleged in Count One;

C. For an award of statutory damages against Ocwen per Plaintiff of One Thousand Dollars ($1,000.00) for any and/or all of the violations alleged in Count Two;

D. For an award of punitive damages as to Plaintiff Christopher Hartsfield against Ocwen in an amount to be determined at trial for the allegations contained in Count Three;

E. For an award of punitive damages as to Plaintiffs against Ocwen in an amount to be determined at trial for the allegations contained in Count Four;

F. For an award of Plaintiffs' Attorneys' Fees and Costs against Ocwen, as applicable, for the allegations contained in Counts One, Two, Three and/or Four; and

G. For all other relief this Court may deem just and proper.

*Respectfully submitted,*

/s/ Brian D. Flick, Esq.

Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
DannLaw
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Christopher M. Hartsfield*
*and Heidi M. Hartsfield*

## JURY DEMAND

Plaintiffs Christopher M. Hartsfield and Heidi M. Hartsfield hereby respectfully demand a trial by jury on all such claims that may be so tried.

/s/ Brian D. Flick, Esq.
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
DannLaw
*Counsel for Plaintiffs Christopher M. Hartsfield*
*and Heidi M. Hartsfield*